Curtis G. Hoke (SBN 282465)
**THE MILLER FIRM, LLC**
108 Railroad Ave.
Orange, VA 22960
Telephone: (540) 672-4224
Facsimile: (540) 672-3055
choke@millerfirmllc.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INES HERNANDEZ and MARIA HERNANDEZ,<br><br>    Plaintiffs,<br>v.<br><br>MONSANTO COMPANY,<br><br>    Defendants. | CASE NO.: 2:16-CV-01988 DMG<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MONSANTO COMPANY'S COMPANY'S MOTION TO DISMISS**<br><br>Hearing Date: June 17, 2016<br>Time: 9:30 A.M.<br>Judge: Hon. Dolly M. Gee<br>COURTROOM: 7 |

# MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS REGARDING PREEMPTION

**Table of Contents**

I. INTRODUCTION ............................................................................................ 1

III.   FACTUAL BACKGROUND ................................................................... 4

IV.   LEGAL STANDARD ............................................................................. 5

V. ARGUMENT ............................................................................................... 6

  a. Plaintiff's Failure To Warn Claims Are Not Preempted ........................ 6

    1.  California Product Liability Law is Equivalent to Federal Law. ....................... 7

    2. EPA Registration of Roundup® Does Not Preempt Plaintiffs' Claims ........... 14

  b. The Restatement (Second) Of Torts § 402a Does Not Bar Any Of Plaintiffs Design Defect Claims As A Matter Of Law ....................................... 18

  c. Plaintiff Seeks Leave to Amend the Breach of Express Warranty Claim ........... 25

  d. There is No Basis to Dismiss Mrs. Hernandez's Loss of Consortium Claims .... 25

VI.   CONCLUSION................................................................................... 25

OPPOSITION TO MOTION TO DISMISS

1
2

# TABLE OF AUTHORITIES

3

**Cases**

4    *Adams v. United States*, 449 F. App'x 653, 658 (9th Cir. 2011) . . . . . . 1, 9, 10

5    *Akhtar v. Mesa,* 698 F.3d 1202, 1212 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . 6

6    *Arias v. Dyncorp*, 517 F. Supp. 2d 221, 229 (D.D.C. 2007) . . . . . . . . . . . . . . 17

7    *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8    *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 757-58 (9th Cir. 2015) . . . 12

9    *Barker v. Lull Eng'g Co*, 20 Cal. 3d 432 (1978) . . . . . . . . . . . . . . . . . . . . . 20

10   *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 432 (2005) . . . . . . . . . . *passim*

11   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) . . . . . . . . . . . . . . . . . 6

12   *Brown v. Super*. Ct., 751 P.2d 470, 475-76 (Cal. 1988) . . . . . . . . . . . . . . . . . 22

13   *Bruesewitz v. Wyeth,* 561 F.3d 233, 240 (3rd Cir. 2009) . . . . . . . . . . . . . . . . 7

14

15   *California Chamber of Commerce v. Brown*, 196 Cal. App. 4th 233, 253, (2011) . 5

16   *Calumet Indus., Inc. v. Brock*, 807 F.2d 225, 226 (D.C. Cir. 1986) . . . . . . . . . 5

17   *Chavez v. Blue Sky Nat. Beverage Co*., 340 F. App'x 359, 360 (9th Cir. 2009) . . . 6

18   *Chavez v. Glock, Inc*., 207 Cal. App. 4th 1283 (2012) . . . . . . . . . . . . . . . . . 11

19   *Chem. Specialties Mfrs. Ass'n, Inc. v. Allenby*, 958 F.2d 941, 947 (9th Cir. 1992) 15

20   *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund,* 520 U.S. 806, 814 (1997) . . 7

21   *Earth Island Inst. v. Hogarth*, 494 F.3d 757, 769 (9th Cir. 2007) . . . . . . . . . . . 5

22   *Euro-Pro Operating LLC v. Euroflex Americas, No*. 08CV6231 (HB ), 2008 WL

23       5137060, at *6 (S.D.N.Y. Dec. 8, 2008) . . . . . . . . . . . . . . . . . . . . . . 15, 16

24   *Ferebee v. Chevron Chemical Co*., 736 F.2d 1529, 1541-1542 (D.C. Cir. 1984) . 8,

25       17

26   *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) . . . . . . . . . . . . . 6

27   *Giglio v. Monsanto Co., No.* 15CV2279 BTM(NLS), 2016 WL 1722859, at *3 (S.D.

28       Cal. Apr. 29, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Hardeman v. Monsanto Co.,* No. 16-CV-00525VC, 2016 WL 1749680 (N.D. Cal. Apr. 8, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Indian Brand Farms, Inc. v. Novartis Crop Prot. Inc.,* 617 F.3d 207, 222-23 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13, 16

*Lewis v. Airco, Inc.,* No. A-3509-08T3, 2011 WL 2731880, at *9 (N.J. Super. Ct. App. Div. July 15, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Massok v. Keller Indus., Inc.,* 147 F. App'x 651, 658 (9th Cir. 2005) . . . . . . . . 19

*Mike Nelson Co. v. Hathaway,* No. F 05-0208 AWI DLB, 2005 WL 2179310, at *4 (E.D. Cal. Sept. 8, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Mut. Pharm. Co. v. Bartlett,* 133 S. Ct. 2466, 2487 (2013) . . . . . . . . . . . . . 22

*Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001) . . . . . . . . . . . . . . . . . 5

*New York State Conf. of Blue Cross & Blue Shld Plans v. Travrs. Ins. Co.,* 514 U.S. 645, 655 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ruiz-Guzman v. Amvac Chem. Corp.,* 7 P.3d 795 (Wash. 2000) (en banc) . . 2, 23

*Skaggs v. Clairol,* 85 Cal. Rptr. 584, 588 (Cal. Ct. App. 1970) . . . . . . . . . . . 20

*Slaughter-House Cases,* 83 U.S. 36 (1872) . . . . . . . . . . . . . . . . . . . . . . 7

*Stoner v. Santa Clara Cty. Office of Educ.,* 502 F.3d 1116, 1120 (9th Cir. 2007) . . 6

*Transue v. Aesthetech Corp.,* 341 F.3d 911, 916 (9th Cir. 2003) . . . . . . . . . . 24

*W. v. Johnson & Johnson Products, Inc.,* 174 Cal. App. 3d 831, 858 (Ct. App. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wyeth v. Levine,* 555 U.S. 555, 570-71 (2009) . . . . . . . . . . . . . . . . . . . 16

**Statutes**

Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7. U.S.C. § 136 *et seq*..................................................................................................*passim*

**Other Authorities**

David G. Owen, *The Puzzle of Comment J*, 55 Hastings L.J. 1377, 1393 (2004) . 21

**Rules**

F.R.C.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Treatises**

Fed. Jud. Ctr., *Reference Manual on Scientific Evidence,* 20, 565 n. 46 (3D ED.
   2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Restatement (Second) Of Torts § 402A . . . . . . . . . . . . . . . . . . . . 2, 22

**Regulations**

29 C.F.R. § 1910.1200(d)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

40 CFR § 156.70  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

40 CFR §§ 159.184 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

40 CFR 180.364 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# I. INTRODUCTION

For over forty years Monsanto has engaged in a successful campaign to conceal the fact that its' weed-killer product Roundup® causes cancer.  In March of 2015, after a public announcement by the World Health Organization, Plaintiff Ines Hernandez first learned that Roundup was a cause of his Non-Hodgkin's Lymphoma ("NHL"). Plaintiff then timely filed this complaint sufficiently alleging causes of action for Strict Liability (Design Defect); Strict Liability (Failure To Warn); Negligence; Breach Of Implied Warranties; Breach of Express Warrant and Punitive Damages arising from his use of Roundup®, manufactured by Defendants, which caused him to develop NHL.

Defendants' Motion to Dismiss should be denied in its entirety.  Defendant's federal preemption arguments have been rejected by decisions in the U.S. Supreme Court and the Ninth Circuit. *Bates v. Dow Agrosciences LLC,*  544 U.S. 431, 432 (2005); *Adams v. United States*, 449 F. App'x 653, 658 (9th Cir. 2011) (unpublished). California product liability warning requirements are not "different from or in addition to" those imposed by federal law and thus are not preempted. 544 U.S. 431, 432 (2005).  "States have ample authority to review pesticide labels to ensure that they comply with both federal and state labeling requirements." *Id.* at 442.  Monsanto bears the heavy burden of proving that Plaintiff's claims are preempted, yet it fails to even state how his complaint seeks to impose requirements other than those imposed by federal law which, like California, require Monsanto to adequately warn about the

1  dangers of Roundup.

2      Defendant's arguments with respect to Comment j and k under Restatement

3  (Second) Of Torts § 402A also fail.  Comment j merely stands for the proposition that

4  Defendants have a duty to warn about the risk of NHL, it does not preclude any non-

5  warning design defect claims.  Defendant acknowledges that Comment k has only

6  been applied in California to the prescription drug or medical devices which are life-

7  saving products.  Even if the Court were to apply Washington law, as argued by

8  Defendants, then Comment k would require an intensive factual inquiry inappropriate

9  for a 12(b)(6) motion.  *Ruiz-Guzman v. Amvac Chemical Corp*., 7 P.3d 795, 803

10  ("[W]e hold that the question of whether a pesticide is governed by  comment k is to

11  be determined on a product-by-product basis... the trier of fact should determine a

12  pesticide's value to society relative to the harm it causes.").

13      This case is one of dozens filed across the country in various jurisdictions

14  alleging that Monsanto's product Roundup® causes Non-Hodgkin's Lymphoma

15  ("NHL").  Defendant has filed nearly identical motions to dismiss in several federal

16  courts around the country.  The first and only two Court's to rule on Monsanto's

17  Motion have soundly rejected Monsanto's arguments with respect to preemption and

18  design defect claims. In the Northern District of California Judge Vince Chhabria

19  held that "the EPA's authority to enforce FIFRA does not prohibit private litigants

20  from also enforcing that statute" and further denied Monsanto's motion with respect

21  to the restatements.  *Hardeman v. Monsanto Co.,* No. 16-CV-00525VC, 2016 WL

1749680 (N.D. Cal. Apr. 8, 2016).  Judge Ted Moskowitz from the Southern District of California also denied Monsanto's motion holding that "Plaintiff's claims regarding failure to warn the public or consumers about the risks of using Roundup are not preempted by FIFRA." *Giglio v. Monsanto Co.*, No. 15CV2279 BTM(NLS), 2016 WL 1722859, at *3 (S.D. Cal. Apr. 29, 2016).

Monsanto's motion fails for other reasons as well. Although styled as a motion to dismiss, Monsanto fails to limit its arguments to the pleadings and assuming the truth of the allegations as the law requires for dismissal motions, instead spending pages upon pages laying out self-serving "fact-based" rhetoric, much of which has nothing to do with Roundup, or its active ingredient glyphosate. Indeed, in an apparent attempt to malign the World Health Organization, Monsanto suggests, without support and against prevailing evidence, that somehow world hunger would increase if Roundup were not available for food production and other similar preposterous facts. Of course, not only does Plaintiff contest those assertions, but, more importantly, they are irrelevant to her allegations against Monsanto. Thus, the Court should ignore the many extraneous statements Monsanto inserts in its motion as irrelevant to the issues and as improper for a motion to dismiss and if Monsanto thinks they are relevant to a decision on its motion, then the motion must be denied. As noted by Judge Moskowitz "a motion to dismiss is not the proper vehicle to delve into the import of EPA classifications or what EPA representatives have said in the past, what information they were relying on, and what effect their

statements have on the issues before the Court." *Giglio,* 2016 WL 1722859 at 5.

## III.   FACTUAL BACKGROUND

Plaintiff Ines Hernandez has been a landscaper for twenty years and used Roundup® extensively during that time. Complaint at ¶ 66.   Mr. Hernandez was diagnosed with non-Hodgkin lymphoma in California in late 2009.  *Id.*at ¶ 67.  Like millions of Americans, Mr. Hernandez was exposed to Roundup without any idea that the weedkiller could cause cancer.  *Id.* at ¶¶ 91-108.   Indeed, Monsanto has always advertised and marketed this product as "safe as table salt" and "practically non-toxic to humans."  *Id.* at ¶ 37.

In March of 2015, the World Health Organization, through its International Agency for Research on Cancer ("IARC"), declared glyphosate, the primary active ingredient of Roundup, to be a probable human carcinogen.  *Id.* at ¶¶ 4-6.  Because of its rigorous scientific method and independence, IARC is a widely respected organization and its findings are considered authoritative.  Organizations such as the American Cancer Society and Federal Judicial Center hold IARC in high esteem The Federal Judicial Center describes IARC as "well-respected and prestigious" and notes that IARC's assessment of carcinogenicity is "generally recognized as authoritative."  Fed. Jud. Ctr., *Reference Manual on Scientific Evidence,* 20, 565 n. 46 (3D ED. 2011).   The State of California mandates that manufacturers issues warnings to the public if IARC finds a chemical to be carcinogenic because IARC is an organization of the "most highly regarded national and international scientists."

*California Chamber of Commerce v. Brown*, 196 Cal. App. 4th 233, 253, (2011). The U.S. Department of Labor's Occupational Safety and Health Administration ("OSHA") also relies on IARC assessments when requiring manufactures to warn of the potential carcinogenicity of chemicals.   29 C.F.R. § 1910.1200, Appendix A; *Calumet Indus., Inc. v. Brock*, 807 F.2d 225, 226 (D.C. Cir. 1986) ("A listing in one of several authoritative sources, including the International Agency for Research on Cancer (IARC) Monographs, establishes that a chemical is carcinogenic.")

IARC is highly respected because it is free from any industry, financial or political influence.   Complaint at ¶ 42.   IARC follows a transparent and rigorous process in evaluating all data including (a) human, experimental, and mechanistic data; (b) all pertinent epidemiological studies and cancer bioassays; and (c) representative mechanistic data. *Id.* at ¶¶ 43-46.   This data is reviewed for over a year by a group of 17 experts from 11 countries culminating in an intensive eight day meeting.   *Id.* Because IARC is not weighing policy or political considerations it focuses solely on scientific evidence.   *See, e.g Earth Island Inst. v. Hogarth*, 494 F.3d 757, 769 (9th Cir. 2007) (scientific analysis should not involve policy decisions).

## IV.   LEGAL STANDARD

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001).   In considering a motion to dismiss, "all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff." *Stoner v. Santa Clara Cty. Office of Educ.*, 502

F.3d 1116, 1120 (9th Cir. 2007). A district court should only grant a motion to dismiss when plaintiffs have not pleaded "enough facts to state a claim to relief that is plausible on its face*." Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

It is well-established that "the motion [to dismiss] is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Chavez v. Blue Sky Nat. Beverage Co*., 340 F. App'x 359, 360 (9th Cir. 2009). Indeed, when reviewing a motion to dismiss, a court may "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa,* 698 F.3d 1202, 1212 (9th Cir. 2012), *see also, Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (judicial notice is limited to documents or facts subject Federal Rule of Evidence 201). Yet, despite this well-established standard of review, Monsanto's Motion relies on a number of documents outside the pleadings that are not matters of public record. See Def.'s Mem. at 2-6, 8, 10, 19. These documents are improper for purposes of a F.R.C.P. 12(b)(6) motion, and the Court must exclude Monsanto's extraneous citations in its review of this motion. See Fed. R. Civ. P. 12(d).

## V. ARGUMENT

### a. Plaintiff's Failure To Warn Claims Are Not Preempted

### 1. California Product Liability Law is Equivalent to Federal Law.

The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7. U.S.C. § 136 *et seq*., does not preempt Plaintiffs' claims.  Monsanto bears a considerable burden of establishing that preemption applies and in this instance has failed to do so. The Court must start with the "presumption that Congress does not intend to supplant state law." *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund,* 520 U.S. 806, 814 (1997). This presumption is heightened "where federal law is said to bar state action in fields of traditional state regulation." *New York State Conf. of Blue Cross & Blue Shld Plans v. Travrs. Ins. Co.,* 514 U.S. 645, 655 (1995). This presumption is particularly strong in personal injury tort cases like this one because the states have historically enjoyed expansive powers to protect the "lives, limbs, health, comfort, and quiet of all persons." *Slaughter-House Cases*, 83 U.S. 36 (1872).  "That issues of health and safety have traditionally fallen within the province of state regulation is beyond refute." *Bruesewitz v. Wyeth*, 561 F.3d 233, 240 (3rd Cir. 2009).  "The long history of tort litigation against manufacturers of poisonous substances adds force to the basic presumption against pre-emption." *Bates,* 544 U.S. at 432.

There is no need to delve into a deep analysis of whether FIRFRA preempts Plaintiffs' claims.  The United States Supreme Court has already done so.  *Bates*, makes clear that FIFRA's preemption reach is very narrow, and that a claim is preempted *only if* Monsanto can show that Plaintiff's  claims impose requirements "different from or in addition to" those imposed by federal law. 544 U.S. at 432.

*Bates* specifically addresses common law failure to warn claims and holds that they are not preempted if they are similar to the requirements of FIFRA. *Id.* at 454. The Supreme Court even instructs courts how to phrase jury instructions in failure to warn claims to avoid preemption considerations holding:

> To survive pre-emption, the state-law requirement need not be phrased in the identical language as its corresponding FIFRA requirement; indeed, it would be surprising if a common-law requirement used the same phraseology as FIFRA. If a case proceeds to trial, the court's jury instructions must ensure that nominally equivalent labeling requirements are genuinely equivalent. If a defendant so requests, a court should instruct the jury on the relevant FIFRA misbranding standards, as well as any regulations that add content to those standards.

*Id.* *Bates* further examines and discusses the important role of common law, failure-to-warn, jury trials in furthering public policy under FIFRA:

> FIFRA contemplates that pesticide labels will evolve over time, as manufacturers gain more information about their products' performance in diverse settings. As one court explained, tort suits can serve as a catalyst in this process:
>
> "By encouraging plaintiffs to bring suit for injuries not previously recognized as traceable to pesticides such as [the pesticide there at issue], a state tort action of the kind under review may aid in the exposure of new dangers associated with pesticides. Successful actions of this sort may lead manufacturers to petition EPA to allow more detailed labelling of their products; alternatively, EPA itself may decide that revised labels are required in light of the new information that has been brought to its attention through common law suits. In addition, the specter of damage actions may provide manufacturers with added dynamic incentives to continue to keep abreast of all possible injuries stemming from use of their product so as to forestall such actions through product improvement."

*Id.* at 451 (*quoting Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529, 1541-1542 (D.C. Cir. 1984)).

In applying *Bates,* the Third Circuit further discussed the interplay between state [New Jersey] warning requirements and the warning requirements under FIFRA holding:

> The NJPLA imposes liability on a manufacturer where "the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it ... failed to contain adequate warnings or instructions." N.J. Stat. Ann. § 2A:58C–2. This provision has been interpreted as consistent with Section 2 of The Restatement (Third) of Torts: Product Liability, i.e., liability is imposed for inadequate warnings "when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable ... warnings ... and the omissions of the ... warnings renders the product not reasonably safe." In the context of this case, this does not appear to us to impose a duty inconsistent with or in addition to the duty imposed by the text of the warning provisions of FIFRA's misbranding requirements. Moreover, Novartis does not purport to have identified any duty imposed by New Jersey law that does not come within this statutory text. Nor has Novartis identified any EPA regulations that "further refine those general standards in any way that is relevant" to Plaintiffs' allegations

*Indian Brand Farms, Inc. v. Novartis Crop Prot. Inc.,* 617 F.3d 207, 222-23 (3d Cir. 2010); *Adams v. United States*, 449 F. App'x 653, 658 (9th Cir. 2011) (failure to warn claims are not preempted where jury instruction "is fully consistent with FIFRA since it sufficiently tracks FIFRA's own requirements" thus "[t]he district court did not err in instructing the jury on Plaintiffs' failure to warn claims.")

The only question left before this Court is whether California product liability law regarding failure to warn parallels FIFRA's requirements on warnings focusing on the "elements of the common-law duty at issue." *Bates*, 544 U.S. at 445. However, Mrs. Hernandez's claims need not be "phrased in the identical language as

its corresponding FIFRA requirement." *Adams,* 449 F. App'x at 658-59.

Here, Plaintiffs' failure to warn claims under California law parallel requirements imposed by FIFRA's misbranding prohibitions. FIFRA prohibits the sale or distribution of any pesticide that is misbranded. 7 U.S.C. § 136j(a)(1)(E). It is a matter of black letter law that when an herbicide manufacturer misbrands its product, it has violated FIFRA and EPA approval of the label is not a valid defense. 7 U.S.C.A. § 136a ("In no event shall registration of an article be construed as a defense for the commission of any offense under this subchapter."). Accordingly, FIFRA imposes a requirement upon herbicide manufacturers not to misbrand its product, consistent with those sought by Plaintiff. An herbicide is misbranded if:

> **(F)** the labeling accompanying it does not contain directions for use which are necessary for effecting the purpose for which the product is intended and if complied with, together with any requirements imposed under section 136a(d) of this title, are adequate to protect health and the environment; [or]
> **(G)** the label does not contain a warning or caution statement which may be necessary and if complied with, together with any requirements imposed under section 136a(d) of this title, is adequate to protect health and the environment[.]

7 U.S.C. § 136(q)(1)(F)-(G). A product is further misbranded if "its label contains a statement that is 'false or misleading in any particular'" *Bates* 544 U.S. at 438. Furthermore, "[w]hen data or other information show that an acute hazard may exist to humans ... the label must bear precautionary statements describing the particular hazard, the route(s) of exposure and the precautions to be taken to avoid accident,

injury or toxic effect or to mitigate the effect." 40 CFR § 156.70.[1]

California law is parallel in providing that "the plaintiff must prove the defendant 'did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the manufacture and distribution" *Chavez v. Glock, Inc*., 207 Cal. App. 4th 1283 (2012). Plaintiff's complaint tracks FIFRA and California law alleging Monsanto is liable because "they failed to communicate adequate information on the dangers and safe use/exposure and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended and reasonably foreseeable uses." Complaint at ¶ 102. Plaintiff further alleges that Defendant "disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries." *Id.* at ¶ 103; see also ¶ 120 ("Failing to disclose to Plaintiffs, users/consumers, and the general public that use of and exposure to Roundup®

---

[1] Defendants rely on a case *Reckitt Benckiser, Inc. v. Jackson*, 762 F. Supp. 2d 34, 45 (D.D.C. 2011), for the proposition that Plaintiff's claims are preempted because "there is no dispute that the Roundup® labeling complies with the terms of EPA's registration." To the contrary, Plaintiff's complaint alleges that Monsanto did not comply with the terms of EPA's registration because it failed to warn about the risk of NHL as required under FIFRA. In *Reckitt*, the Court agreed that FIFRA registration was analogous to "a valid driver's license" which does not protect a driver "against a speeding ticket." *Id.* Likewise, Monsanto's license to sell Roundup® does not protect the from tort liability just as a driver's license protects a driver from tort liability. In any event, *Reckitt* deals with administrative proceedings at the EPA and has no relation to the present matter.

presented severe risks of cancer."). Plaintiff also specifically alleges that "[t]o the extent California law imposes a duty or obligation on the Defendant that exceeds those required by federal law, Plaintiffs do not assert such claims. All claims asserted herein run parallel to federal law, i.e., the Defendant's violations of California law were also violations of federal law. *Id.* at ¶ 162.

Defendant fails to specify how California law is in any way different from or in addition to federal law. Indeed, it is not. To the extent it differs, the U.S. Supreme Court has instructed that a curative jury instruction can mitigate such differences. *Bates supra; See also Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 757-58 (9th Cir. 2015) ("To the extent state law might be construed more broadly than federal law, the solution is not to prohibit state law suits altogether, but to 'instruct the jury on the relevant [federal] standards, as well as any regulations that add content to those standards."). However, if anything, California law is more favorable to the Defendants because "a manufacturer's duty under California law is slightly narrower than its duty under FIFRA:" *Hardeman,* 2016 WL 1749680, at *1.

*Mirzaie v. Monsanto* Co., is inapplicable to the present case. No. CV1504361DDPFFMX, 2016 WL 146421, at *2 (C.D. Cal. Jan. 12, 2016). In *Mirzaie,* the Plaintiffs brought an action seeking injunctive relief to have the Court or Jury strike certain phrases from the Roundup® label without EPA approval. *Id.* Under FIFRA, a Court or jury does not have authority to mandate a label change and Plaintiffs here do not ask for such an injunction. Judge Chhabra noted that:

OPPOSITION TO MOTION TO DISMISS

unlike the *Mirzaie* plaintiffs, [plaintiff doesn't seek an injunction dictating the contents of Roundup's label: he just contends that Roundup's existing label violates FIFRA, implying that the EPA failed to enforce FIFRA correctly when it approved that label. And Bates tells us that the EPA's authority to enforce FIFRA—unlike the EPA's authority to approve all pesticide labeling—isn't exclusive.

*Hardeman,* 2016 WL 1749680, at *2.  A court or jury, can provide a remedy in terms of financial compensation for Plaintiffs who are injured under when a Defendant fails to comply with FIFRA's requirement that it adequately warn of dangers.  "[T]he threat of a damages remedy will give manufacturers an additional cause to comply ... Accordingly, although FIFRA does not provide a federal remedy to farmers and others who are injured as a result of a manufacturer's violation of FIFRA's labeling requirements, nothing in § 136v(b) precludes States from providing such a remedy" *Bates,* 544 U.S. at 448.

Furthermore, *Bates,* is not limited to claims of lack of efficacy as Defendants suggest.  The Plaintiffs in *Bates* were bringing a failure to warn suit alleging that Defendants failed to warn about the dangers of the pesticide in killing their crops.  *Id.* at 435. The Plaintiffs did not allege the pesticide didn't work.  *Id.*  In a similar crop damage case, the Third Circuit applied *Bates* where the "case does not involve the efficacy of [pesticide]. Plaintiffs do not allege that it fails to perform in the manner intended with respect to targeted pests; rather, they complain about plant damage, which in FIFRA terminology is damage to the 'environment.'" *Indian Brand Farms, Inc.*, 617 F.3d at 213

**2. EPA Registration of Roundup® Does Not Preempt Plaintiffs' Claims**

Defendants argue that the fact the EPA registered Roundup® with Monsanto's proposed label absolves them of any responsibility.  This proposition is blatantly at odds with the plain language of the federal statutes, congressional intent and Supreme Court precedent interpreting the statute. In fact, the United States Supreme Court considered and rejected this in its *Bates* decision noting that "tort suits can serve as a catalyst in this process" of updating a label with new safety data. *Id.* at 447, 451.

Under the plain language of FIFRA "registration does not provide a defense to the violation of the statute." 7 U.S.C. § 136a(f)(2). Therefore, an herbicide can be registered but still violate FIFRA by, among other things, failing to provide adequate warnings. 7 U.S.C. §§ 136j(a)(1)(E), (f)(2).  Because an herbicide can be registered with an approved label and nonetheless still be misbranded, **FIFRA's plain language makes clear that warning requirements exist independent of EPA labeling decisions[2].**

Under FIFRA, "a manufacturer seeking to register a pesticide must submit a proposed label to EPA as well as certain supporting data."  *Id.* (citing 7 U.S.C. §§ 136a(c)(1)(C), (F)).   However, EPA approval of a proposed label provides only a

---

[2]  Indeed, under California state law, warnings different than those of EPA are often placed on a variety of products under California's "Prop 65" legislation. Here, a notice of proposed rule-making has been written which will soon require Monsanto to place a Prop 65 warning on Roundup that Roundup is "known to the state of California to cause cancer," and the listing of Roundup as a known carcinogen may be completed by the time of the hearing on this matter. See, http://oehha.ca.gov/prop65/CRNR_notices/admin_listing/intent_to_list/090415LCset27.html

"floor of safe conduct" it does not provide "a ceiling on the ability of states to protect their citizens." *Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529, 1541-1542 (D.C. Cir. 1984).

> The EPA does not independently test or study pesticides, but "depends upon the applicant to perform the tests, assemble the studies, and provide the data upon which EPA relies in registering the product and approving the label. Id. Moreover, "[t]he EPA's approval of a product's FIFRA label does not constitute a finding or an endorsement that its design is safe."

*Euro-Pro Operating LLC v. Euroflex Americas, No*. 08CV6231 (HB ), 2008 WL 5137060, at *6 (S.D.N.Y. Dec. 8, 2008)

After the EPA approves the initial label, "manufacturers have a continuing obligation to adhere to FIFRA's labeling requirements." *Bates.* (citing § 136j(a)(1)(E)). "FIFRA provides that a pesticide is misbranded if the warning on the label is insufficient to protect the public health. 7 U.S.C. § 136(q)(1)(G) (1988). As manufacturers uncover additional information about the health risks of their products, they must bring this information to the attention of the EPA and add this information to their product labels." *Chem. Specialties Mfrs. Ass'n, Inc. v. Allenby*, 958 F.2d 941, 947 (9th Cir. 1992). Further, "[M]anufacturers have a duty to report incidents involving a pesticide's toxic effects that may not be adequately reflected in its label's warnings.." *Id.* (citing 40 CFR §§ 159.184(a), (b) (2004)). A manufacture also "may seek approval to amend its label." *Bates* 544 U.S. 438-439.

In a case applying analogous drug safety statutes, the U.S. Supreme Court noted that government approval of a label is not a grounds for preemption because a

"manufacturer bears responsibility for the content of its label at all times. It is charged both with crafting an adequate label and with ensuring that its warnings remain adequate." *Wyeth v. Levine,* 555 U.S. 555, 570-71 (2009) (applying analogous statutes under FDCA). Defendants here are likewise promoting an argument based on a "fundamental misunderstanding" that the EPA "rather than the manufacturer, bears primary responsibility for drug labeling." *Id.* at 572. It is Monsanto, not the EPA, that is responsible for causing Plaintiff to develop cancer.

Even if the EPA did prevent Monsanto from changing the Roundup® label, Monsanto can still be liable for failing to warn through means other than the label. Nothing in FIFRA prevents Manufacturers from warning about the dangers of its products through means such as advertising, press releases, pamphlets or point-of-sale banners. *Indian Brand Farms, Inc.,* 617 F.3d at 217. (Data sheets providing further warning of pesticides presented to purchasers not contained in label is not preempted by FIFRA); *Allenby*, 958 F.2d at 945 (point-of-sale signs posted at retail locations warning of dangers not contained in label not preempted by FIFRA). Indeed, OSHA requires that Monsanto warn about the carcinogenic risk to workers, such as Mr. Hernandez who are exposed to glyphosate containing products. *Lewis v. Airco, Inc.,* No. A-3509-08T3, 2011 WL 2731880, at *9 (N.J. Super. Ct. App. Div. July 15, 2011) ("OSHA relies on IARC evaluations in determining what information industries must include on their labels and on the material safety data sheets.")

Monsanto's reliance upon factual assertions about EPA classifications

regarding glyphosate's "safety" is irrelevant and improper, as the EPA itself has stated that its classification "should not be interpreted as a definitive conclusion that the agent will not be a carcinogen."  Complaint at ¶ 27. Furthermore, even if the EPA concluded that glyphosate doesn't cause cancer, such classifications by the EPA do not constitute Congressional intent that herbicides cannot be challenged as unsafe under state tort law. *Arias v. Dyncorp*, 517 F. Supp. 2d 221, 229 (D.D.C. 2007); *Ferebee,* 736 F.2d at 1539–40 (finding that a federal agency's determination that a product was safe for distribution under federal law and did not "pose an unreasonable risk to the normal user," did not preempt state tort claims challenging labeling). Rather, that is a question for the fact finder to determine.

The "findings," made by the EPA throughout the years in the federal registers are simply reiterations of the 1991 classification of glyphosate based on animal studies provided by Monsanto.  As Plaintiffs have alleged in the complaint:

> Based on early studies that glyphosate could cause cancer in laboratory animals, the EPA originally classified glyphosate as possibly carcinogenic to humans (Group C) in 1985. After pressure from Monsanto, including contrary studies it provided to the EPA, the EPA changed its classification to evidence of non-carcinogenicity in humans (Group E) in 1991. In so classifying glyphosate, however, the EPA made clear that the designation did not mean the chemical does not cause cancer: "It should be emphasized, however, that designation of an agent in Group E is based on the available evidence at the time of evaluation and should not be interpreted as a definitive conclusion that the agent will not be a carcinogen under any circumstances."

Complaint at ¶ 32.

The EPA has not made any new classifications as to the carcinogenicity of

Glyphosate since 1991.  The 2013 "findings" were "[b]ased on the lack of evidence of carcinogenicity in two adequate rodent carcinogenicity"[3] studies which were conducted in the 1980s.  Finally, the language from Federal Register documents that Defendants cite are not actually regulations, but are rather supplementary information offered to explain changes to 40 CFR 180.364 - Glyphosate; tolerances for residues. There is no reference to carcinogenicity in the actual regulation.  As Judge Chhabra noted these "FDCA regulations don't "give content to FIFRA's misbranding standards." *Hardeman v. Monsanto Co.*, 2016 WL 1749680, at *2.  They are also immaterial to this cases because the FDCA regulations were implemented to determine safe levels for residual glyphosate on food that is consumed by the public. Plaintiff, here is alleging direct occupational exposure to glyphosate caused his NHL and not that exposure to glyphosate residues on food caused his NHL.

Monsanto's conclusions on rodent studies have since been debunked by the World Health Organization's International Agency for Research on Cancer ("IARC"), the authoritative source on assessing carcinogens.  Compl. at ¶¶ 46-62. Unlike the EPA's assessment based on a few, decades-old rodent studies, IARC has examined all relevant and up-to-date data which includes hundreds of studies. Furthermore, IARC makes an independent assessment free from the relentless lobbying efforts of Monsanto.

**b. The Restatement (Second) Of Torts § 402a Does Not Bar Any Of Plaintiffs Design Defect Claims As A Matter Of Law**

---

[3] Glyphosate; Pesticide Tolerances, 78 Fed. Reg. 25,396, 25,399 (May 1, 2013)

OPPOSITION TO MOTION TO DISMISS

Defendant's argument with respect to the Restatement are largely academic because Defendant has never warned about the risk of NHL, so it cannot use an adequate warning as a defense to design defect claims. Nevertheless, Plaintiff can allege both a warning and non-warning design defect claim. Defendants are incorrect that a failure-to-warn claim precludes a design defect claim. Under California law, "[a]n attorney is permitted to argue to the jury any theory of the evidence of which it is reasonably susceptible." *W. v. Johnson & Johnson Products, Inc.*, 174 Cal. App. 3d 831, 858 (Ct. App. 1985)) (holding "jurors could well have found [defendants] liable on the basis of design defect, even if they concluded that it was not liable for failing to give an adequate warning."); *See also Massok v. Keller Indus., Inc.*, 147 F. App'x 651, 658 (9th Cir. 2005) (affirming dismissal of failure-to-warn claim while reversing dismissal of Design Defect claim under consumer expectation test.). Futhermore, Plaintiff need not put forth evidence of an alternative design to prevail on a non-warning design defect case[4], Plaintiff must only show that "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Massok* 147 F. App'x at 658. Design Defect and Failure to Warn claims go hand-in-hand and juries in California may be instructed on any or all theories of design defect. *See* CACI 1200.

---

[4] Plaintiff nevertheless does allege that there was a "practical, technically feasible and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendants' herbicides" Complaint ¶¶ 81-82

Even if applicable, nowhere in Comment j is there language to support Defendants' argument that failure to warn claims preclude design defect claims. Defendants cite *Skaggs v. Clairol*, in support of their argument that Comment j precludes design defect cases. 85 Cal. Rptr. 584, 588 (Cal. Ct. App. 1970). However, *Skaggs*, is inapplicable for several reasons. First, the case has been superseded by *Barker v. Lull Eng'g Co.*, where the California Supreme Court established the modern standards for strict liability holding:

> ... a product may be found defective in design, so as to subject a manufacturer to strict liability for resulting injuries, under either of two alternative tests. First, a product may be found defective in design if the plaintiff establishes that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. Second, a product may alternatively be found defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design

20 Cal. 3d 413, 432, (1978). Second, the case settled shortly after the California Supreme Court granted Plaintiff's petition to review the case. *Skaggs* 85 Cal. Rptr. 584. Third, the plaintiff actually conceded that there was no evidence of a defect other than the failure to warn. *Id.* at 588. For those reasons, *Skaggs* has never been cited by another California court over the last 45 years for the proposition that a failure-to-warn claim precludes a non-warning design defect claim.

Defendants also cite to a law review article that stands for the exact opposite proposition argued by Defendants. That article reads, "[w]ith the exception of a handful of misguided decisions that have misinterpreted comment j as negating the

general duty of safe design, the vast majority of courts, some rejecting comment j explicitly on this point, hold that the separate forms of defect give rise to separate obligations that may independently support a products liability claim." David G. Owen, *The Puzzle of Comment J*, 55 Hastings L.J. 1377, 1393 (2004) ("Chief Justice Traynor ... noted that comment j in no way insulates manufacturers who provide warnings from liability for the other two types of product defects -manufacturing defects and defects in design. That is, manufacturers cannot use warnings to shift responsibility to consumers for these other, independent types of defects.").

Judge Chhabra rejected Defendant's reasoning holding:

> Comment j doesn't support Monsanto's argument. That comment provides that, "[i]n order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning." Restatement (Second) of Torts § 402A cmt. j (1965). This means that a plaintiff can bring failure-to-warn claims, but it doesn't mean that a plaintiff can bring *only* failure-to-warn claims. Comment j also provides that "a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." *Id.* But Hardeman alleges that Roundup did *not* bear the warning it should have, so he's free to allege that Roundup was also "in defective condition" or "unreasonably dangerous."

*Hardeman v. Monsanto Co.*, 2016 WL 1749680, at *3.

Comment k is also inapplicable to the present case. As a threshold matter, Comment k would only provide a defense from strict liability if the product was "properly prepared and marketed, and proper warning is given." *Brown* 44 Cal. 3d at 1058 (quoting Restatement (Second) of Torts, supra, § 402A comment k). Here, however, there is nothing even approximating a warning from Monsanto that

Roundup® causes NHL in this case and thus Comment k could not possibly afford Defendants any protection from design defect claims.

Furthermore, an herbicide does not qualify for Comment k protection.  The comment provides that the "producer of a properly manufactured prescription drug" is not "to be held  to strict liability for unfortunate consequences attending their use..."  *Brown*, 44 Cal. 3d. at 1058-59 (quoting Restatement (Second) of Torts, supra, § 402A comment k).  Comment k is also an affirmative defense, which cannot be determined at the pleading stage unless it is established on the face of the complaint.  *See Mut. Pharm. Co. v. Bartlett*, 133 S. Ct. 2466, 2487 (2013).  The burden is thus on Monsanto to affirmatively *prove* that the protections under comment k apply and to explain why and how its product is unavoidably unsafe within the meaning of the Restatement comments.

Comment k provides a negligence-based standard for evaluating which products are unreasonably dangerous and which are not. Comment k thus recognizes a subset of products where the risks inherent in their use are justified due to their utility. Roundup® is not such a product and does not qualify for comment k's protection.  Comment k was intended to address the concern that manufacturers of socially useful and life-saving pharmaceuticals could be subject to liability that would impede the development of new and experimental drugs. *See Brown v. Super*. Ct., 751 P.2d 470, 475-76 (Cal. 1988).   Comment k has been limited to pharmaceuticals and medical devices under California law.

The factors and analysis underlying this thread of cases is inapplicable to glyphosate and Roundup®. Roundup® is more appropriately characterized under Brown as a "product [that] is used to make work easier" (and therefore outside of comment k's protection) rather than a product that is "necessary to alleviate pain and suffering or to sustain life." *Brown,* 751 P.2d at 478. In no manner does the instant complaint allege, or even suggest, that Roundup® is a life-sustaining product.  For these reasons, comment k's protections do not extend to pesticides and comment k does not preclude Plaintiff's design defect claims

As a class-based exemption for pesticides has no support in the law, Monsanto relies on *Ruiz-Guzman v. Amvac Chem. Corp*., 7 P.3d 795 (Wash. 2000) (en banc), to argue that comment k may be applied to pesticides on a case-by-case basis. *Ruiz-Guzman* expressly rejects a class-based exemption for pesticides under comment k and further holds that the issue of whether comment k is applicable to a pesticide cannot be resolved at the motion to dismiss stage.  *Id.*  Under *Ruiz-Guzman*, a product qualifies for comment k protection only if its utility outweighs its risk, and a risk-utility determination is the jury's function. See *Id.* at 804. ("[T]he trier of fact should determine a pesticide's value to society relative to the harm it causes.").  Monsanto cannot demonstrate comment k bars plaintiffs design defect claims as a matter of law.

Monsanto's attempt to compare the utility of Roundup® to pharmaceutical drugs and medical products only underscores the impropriety of applying comment k at this stage. Monsanto appropriates *Brown*'s language on the societal value of

OPPOSITION TO MOTION TO DISMISS

prescription medication, but the rationale is unpersuasive in the context of pesticides. Furthermore, as Plaintiffs have alleged, Roundup® is being pulled off the market in several countries undermining the societal value of Roundup.®  Compl. ¶¶ 60-65. Defendant's cherry-picking of commentaries from extraneous materials does not support the dismissal of Plaintiff's complaint.  The societal value, or lack therof, of Roundup® is very much in dispute and it is a question that will require extensive discovery, expert analysis and a jury's verdict to resolve.

Although Monsanto argues that further testing would add to the regulatory delay for the release of "vital herbicide products," (Mot. at 20), it does not explain how a delay for additional testing would negatively impact public welfare. Unlike prescription drugs, the availability of an herbicide is never a matter of life or death. The rationale for extending comment k protection to medical products is based, in large part, on the presence of medical professionals and intermediaries who can negotiate the risks and benefits involved in prescription drugs and implanted medical devices. *See Transue v. Aesthetech Corp.*, 341 F.3d 911, 916 (9th Cir. 2003) (quoting *Ruiz-Guzman,* 7 P.3d at 802-03). No such intermediary exists between manufacturers of pesticides and their ultimate users and consumers.

Finally, even if the Court were to find that design defect and failure-to-warn claims are mutually exclusive somehow, the Plaintiff may still proceed under both theories at the pleading stage.  "Under the Federal Rules, a plaintiff may set forth inconsistent legal theories in its pleadings and will not be forced to elect a single

theory on which to seek recovery." *Mike Nelson Co. v. Hathaway*, No. F 05-0208 AWI DLB, 2005 WL 2179310, at *4 (E.D. Cal. Sept. 8, 2005).

**c. Plaintiff Seeks Leave to Amend the Breach of Express Warranty Claim**

Plaintiff at this time withdraws the breach of express warranty claim and requests that the Court dismiss the claim without prejudice and grant leave to amend the complaint with respect to the Breach of Express Warranty Claim. *See Giglio,* 2016 WL 1722859 at 5.

**d. There is No Basis to Dismiss Mrs. Hernandez's Loss of Consortium Claims**

Defendant's only argument in support of dismissing Mrs. Hernandez's loss of consortium claims is contingent on the dismissal of the Failure to Warn, Design Defect, and Warranty Claims. Because these claims should not be dismissed, neither should Mrs. Hernandez's loss of consortium claim.

**VI.    CONCLUSION**

For the aforementioned reasons, the Court should deny the Defendants' Motion to Dismiss in its entirety.

Respectfully Submitted, this 27th day of May, 2016

Plaintiff
By Counsel

/s/ Curtis G Hoke (SBN 282465)
The Miller Firm, LLC
108 Railroad Avenue
Orange, VA 22960
Tel: (540) 672-4224
Fax: (540) 672-3055

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent by email and first class mail, postage prepaid, to those indicated as non-registered participants on this date.

Dated: May 27, 2016                                         /s/ Curtis G Hoke

OPPOSITION TO MOTION TO DISMISS