UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-1988-DMG (Ex)** | Date | July 12, 2016 |
| Title | *Ines Hernandez and Maria Hernandez v. Monsanto Company* | Page | **1** of **14** |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER RE MOTION TO DISMISS [20]**

On March 23, 2016, Plaintiffs Ines Hernandez and Maria Hernandez filed this action against Monsanto Company.[1] [Doc. # 1.] The complaint alleges claims for strict products liability based on design defect, strict products liability based on failure to warn, negligence, breach of implied warranty, breach of express warranty, and loss of consortium. On April 26, 2016, Monsanto filed a motion to dismiss.[2] Plaintiffs oppose the motion.[3]

## I. FACTUAL BACKGROUND[4]

In the 1970s, Monsanto discovered the herbicidal properties of glyphosate and began marketing it in products under the brand name Roundup.[5] The Environmental Protection Agency ("EPA") and the State of California have registered Roundup for distribution, sale, and manufacture in the United States and the State of California.[6] Generally, the registrant, in this case Monsanto, conducts the health and safety testing of pesticide products; the EPA sets

---

[1] Complaint [Doc. # 1.]

[2] Notice of Motion to Dismiss Case ("Motion") [Doc. # 20]; *see also* Reply in Support of Notion of Motion and Motion to Dismiss ("Reply"). [Doc. # 28].

[3] Memorandum in Opposition to Notice of Motion and Motion to Dismiss Case ("Opposition") [Doc. # 26].

[4] The Court assumes the truth of the factual allegations in the Complaint solely for the purpose of deciding the motion to dismiss.

[5] Complaint, ¶ 1.

[6] *Id.*, ¶ 23.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 16-1988-DMG (Ex) | Date | July 12, 2016 |
| Title | Ines Hernandez and Maria Hernandez v. Monsanto Company | Page | 2 of 14 |

protocols governing the tests and laboratory practices required for registration but does not conduct the tests itself.[7]

The EPA originally classified glyphosate as "possibly carcinogenic to humans" in 1985.[8] After pressure from Monsanto, including contrary studies it provided to the EPA, the EPA changed its classification to "evidence of non-carcinogenicity in humans" in 1991.[9] On two occasions, however, the EPA purportedly found that the laboratories hired by Monsanto to test the toxicity of its Roundup products had committed fraud.[10]

On July 29, 2015, the International Agency for Research on Cancer ("IARC"), an agency of the World Health Organization ("WHO"), issued a formal monograph, reviewing numerous studies and data relating to glyphosate exposure in humans.[11] The IARC Working Group classified glyphosate as a Group 2A herbicide, which means that it is "probably carcinogenic to humans."[12] The Working Group concluded that the cancers most associated with glyphosate exposure are non-Hodgkin lymphoma and other haematopoietic cancers.[13] Plaintiffs allege that despite the fact that glyphosate is toxic to humans, Monsanto has repeatedly represented that glyphosate is safe to humans and the environment.[14]

As of 2013, glyphosate was the world's most widely used herbicide.[15] Monsanto's glyphosate products are registered in 130 countries and approved for use on over 100 different

---

[7] *Id.*, ¶ 24.

[8] *Id.*, ¶ 27.

[9] *Id.*

[10] *Id.*, ¶¶ 28-33.

[11] *Id.*, ¶ 5.

[12] *Id.*, ¶ 6.

[13] *Id.*

[14] *Id.*, ¶¶ 7-8.

[15] *Id.*, ¶ 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-1988-DMG (Ex) | Date | July 12, 2016 |
|---|---|---|---|
| Title | *Ines Hernandez and Maria Hernandez v. Monsanto Company* | Page | **3** of **14** |

crops.[16] Glyphosate has been found in rivers, streams, groundwater, food, the urine of agricultural workers, and even the urine of urban dwellers who are not in direct contact with glyphosate.[17]

Ines Hernandez has worked as a professional landscaper in Southern California for the past twenty years, using Roundup products extensively throughout that time period.[18] Mr. Hernandez was diagnosed with non-Hodgkin lymphoma in late 2009.[19]

## II.  DISCUSSION

### A.  Legal Standard Governing Motions to Dismiss

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The Court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995). A plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Should the Court dismiss certain claims in the complaint, it must also decide whether to grant leave to amend. "Courts are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave should be granted with 'extreme liberality.'" *Moss v. U.S. Secret Service*, 572 F.3d 962, 972 (9th Cir. 2009) (citation omitted) (quoting Fed. R. Civ. P.

---

[16]*Id.*, ¶ 3.

[17]*Id.*

[18]*Id.*, ¶ 66.

[19]*Id.*, ¶ 67.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-1988-DMG (Ex)** | Date | July 12, 2016 |
|---|---|---|---|
| Title | *Ines Hernandez and Maria Hernandez v. Monsanto Company* | Page | **4** of **14** |

15(a)(2); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). A court should not deny leave to amend unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (internal quotation marks omitted; quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).

### B. Whether Plaintiffs' Warnings-Based Claims Are Preempted

Monsanto first argues that Plaintiffs' California common law warnings-based claims (claims II, III, IV, and V) are expressly preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136v(b).[20]

#### 1. Legal Standard Governing Federal Preemption Claims

"[I]t is a familiar and well-established principle that the Supremacy Clause . . . invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985); *see also Gibbons v. Ogden*, 22 U.S. 1, 82 (1824) ("In every such case, the act of Congress, or the treaty, is supreme; and the law of the State, though enacted in the exercise of powers not controverted, must yield to it"); *Law v. General Motors Corp.*, 114 F.3d 908, 909 (9th Cir. 1997) ("The Supremacy Clause empowers Congress to supplant decentralized, state-by-state regulation with uniform national rules"). Federal law "encompasses both federal statutes themselves and federal regulations that are properly adopted in accordance with statutory authorization." *City of New York v. F.C.C.*, 486 U.S. 57, 63 (1988); *see also Hillsborough County*, 471 U.S. at 713 (The Supreme Court has "held repeatedly that state laws can be preempted by federal regulations as well as by federal statutes"); *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("Federal regulations have no less pre-emptive effect than federal statutes").

The defendant bears the burden of demonstrating that preemption exists. "[I]n all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *see also Altria Group v. Good*, 555 U.S. 70, 77 (2008); *Gonzalez v. Arizona*, 677 F.3d

---

[20] Motion at 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-1988-DMG (Ex)** | Date | July 12, 2016 |
| Title | *Ines Hernandez and Maria Hernandez v. Monsanto Company* | Page | **5** of **14** |

383, 395 (9th Cir. 2012) ("[C]ourts applying the Supremacy Clause are to begin with a presumption against preemption"). "The long history of tort litigation against manufacturers of poisonous substances adds force to the basic presumption against pre-emption." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 432 (2005).

The Supreme Court has identified three types of preemption: (1) express preemption, (2) field preemption, and (3) conflict preemption. *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1039 (9th Cir. 2015) (citing *Altria Group*, 555 U.S. at 76-77). A state statute is expressly preempted when Congress "so stat[es] in express terms." *Hillsborough County*, 471 U.S. at 713. The burden of proving express preemption is a high one: "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors pre-emption." *McClellan*, 776 F.3d at 1039 (internal quotation marks omitted). Nonetheless, "[p]re-emption is not a matter of semantics. A State may not evade the pre-emptive force of federal law by resorting to creative statutory interpretation or description at odds with the statute's intended operation and effect." *Wos v. E.M.A. ex rel. Johnson*, __U.S.__, 133 S. Ct. 1391, 1398 (2013).

### 2. FIFRA Background and Express Preemption Clause

"FIFRA regulate[s] the use, as well as the sale and labeling, of pesticides; regulate[s] pesticides produced and sold in both intrastate and interstate commerce; [and] provide[s] for review, cancellation, and suspension of registration." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 991-92 (1984).

Section 136v(b) of FIFRA contains an express preemption clause, which limits the role of states in regulating warnings for pesticides and herbicides. According to that section, states "shall not impose or continue in any effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C. § 136v(b). The express preemption clause preempts not only state statutes and regulations, but also common-law duties. *Bates*, 544 U.S. at 443; *see also Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466, 2479-80 (2013) (reiterating that under *Bates*, a state common-law claim imposes a "pre-emptable 'requirement'"). The *Bates* Court broke down the analysis of FIFRA preemption into a two-step test. "First, [the state law] must be a requirement for labeling or packaging. . . . Second, it must impose a labeling or packaging requirement that is in addition to or different from those required under [FIFRA]." *Id.* at 444.

"Labeling" is defined as "all labels and all other written, printed, or graphic matter . . . accompanying the pesticide or device at any time." 7 U.S.C. § 136(p)(2)(A). The content of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-1988-DMG (Ex)** | Date | July 12, 2016 |
|---|---|---|---|
| Title | *Ines Hernandez and Maria Hernandez v. Monsanto Company* | Page | **6** of **14** |

materials, not their physical proximity to a product, controls whether they "accompany" the product so as to be treated as "labeling." *Kordel v. United States*, 335 U.S. 345, 350 (1948).

The subchapter in which the express preemption clause is contained encompasses 7 U.S.C. §§ 135-136y. Under 7 U.S.C. §§ 136a(C)(1)(c) and (F), herbicide manufacturers must register the herbicides they produce; such registration requires the manufacturers to submit a proposed label and certain supporting data to the EPA. *See also Bates*, 544 U.S. at 438. As a part of the registration process, the EPA evaluates and approves the language that appears on each herbicide label to ensure that it complies with 7 U.S.C. §§ 135-136y and the implementing regulations corresponding with those sections, including 40 C.F.R. § 156.10(i)(1)(i) and 40 C.F.R. § 156.60. The EPA will approve a pesticide application only if "[t]he Agency has determined that the product is not misbranded as that term is defined in FIFRA . . . and its labeling and packaging comply with the applicable requirements of the Act." 40 C.F.R. § 152.112(f).

Section 156.10(i)(1)(i) specifies the information that a herbicide label must include. Such information includes directions for use that, when followed, are adequate to protect the public from fraud and from personal injury and to prevent unreasonable adverse effects on the environment." Further, "[e]ach product label is required to bear hazard and precautionary statements for humans and domestic animals (if applicable) . . . . Hazard statements describe the type of hazard that may occur, while precautionary statements will either direct or inform the user of actions to take to avoid the hazard or mitigate its effects." 40 C.F.R. § 156.60. Finally, "[w]hen data or other information show that an acute hazard may exist to humans . . . the label must bear precautionary statements describing the particular hazard, the route(s) of exposure and the precaution to be taken to avoid accident, injury or toxic effect or to mitigate the effect." 40 CFR § 156.70.

FIFRA also prohibits herbicide manufacturers from misbranding their products. 7 U.S.C. § 136j(a)(1)(E). An herbicide is misbranded if:

> "(F) the labeling accompanying it does not contain directions for use which are necessary for effecting the purpose for which the product is intended and if complied with, together with any requirements imposed under section 136a(d) of this title, are adequate to protect health and the environment; [or]
> (G) the label does not contain a warning or caution statement which may be necessary and if complied with, together with any requirements imposed under section 136a(d) of this title, is adequate to protect health and the environment[.]" 7 U.S.C. § 136(q)(1)(F)-(G)B.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-1988-DMG (Ex)** | Date | July 12, 2016 |
| Title | *Ines Hernandez and Maria Hernandez v. Monsanto Company* | Page | **7** of **14** |

A product is further misbranded if "its label contains a statement that is 'false or misleading in any particular.'" *Bates,* 544 U.S. at 438. The corresponding regulations add that "it [is] unlawful for any person to 'offer for sale' any pesticide . . . if claims made for it as part of its distribution or sale differ substantially from any claim . . . required in connection with its registration under FIFRA. . . ." 40 C.F.R. § 168.22(a). "The EPA interprets these provisions as extending to advertisements in any advertising medium to which pesticide users of the general public have access." *Id.*

### 3. California's Requirements Parallel FIFRA

Section 136v(b) "pre-empts any statutory or common-law rule that would impose a labeling requirement that diverges from those set out in FIFRA and its implementing regulations. It does not, however, pre-empt any state rules that are fully consistent with federal requirements." *Bates*, 544 U.S. at 452. Plaintiffs argue that California state law warning requirements are parallel to FIFRA's misbranding requirements and that their warnings-based claims are therefore not preempted.

"To survive pre-emption, the state-law requirement need not be phrased in the identical language as its corresponding FIFRA requirement; indeed, it would be surprising if a common-law requirement used the same phraseology as FIFRA." *Bates*, 544 U.S. at 454; *see also Adams v. United States*, 449 F. App'x 653, 658 (9th Cir. 2011) (failure to warn claims were not preempted where jury instruction "sufficiently track[ed] FIFRA's own requirements"); *Indian Brand Farms, Inc. v. Novartis Crop Prot. Inc.*, 617 F.3d 207, 222-23 (3d Cir. 2010)(finding that state law warning requirements that imposed liability "when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable . . . warnings . . . and the omissions of the . . . warnings renders the product not reasonably safe" did not "impose a duty inconsistent with or in addition to the duty imposed by the text of the warning provisions of FIFRA's misbranding requirements").

California's common law rules imposing liability for failure to closely parallel the requirement set forth in 40 C.F.R. § 156.70. That section states:

> When data or other information show that an acute hazard may exist to
> humans . . . the label must bear precautionary statements describing the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-1988-DMG (Ex) | Date | July 12, 2016 |
|---|---|---|---|
| Title | *Ines Hernandez and Maria Hernandez v. Monsanto Company* | Page | **8** of **14** |

particular hazard, the route(s) of exposure and the precaution to be
taken to avoid accident, injury or toxic effect or to mitigate the effect.

40 CFR § 156.70.

Similarly, California law provides that manufactures must "adequately warn of . . . particular risk[s] that [were] known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the manufacture and distribution." *Chavez v. Glock, Inc.*, 207 Cal. App. 4th 1283 (2012) (internal quotes omitted). In other words, both FIFRA and California law require that if (1) known or knowable information exists showing that the herbicide poses some risk, (2) a manufacturer must provide an adequate warning.

"If anything, a manufacturer's duty under California law is slightly narrower than its duty under FIFRA: California law sometimes (in negligence) allows a manufacturer to escape liability where a warning would be unreasonable, but FIFRA seems always to require a warning that is 'necessary' and 'adequate' to protect human health—whether or not such a warning is otherwise reasonable." *Hardeman v. Monsanto Co.*, No. 16-CV-00525VC, 2016 WL 1749680, at *1 (N.D. Cal. Apr. 8, 2016)(citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 758 (9th Cir.2015)); *cf. Bates*, 544 U.S. at 453 ("[W]ere the Court of Appeals to determine that the element of falsity in Texas' common-law definition of fraud imposed a broader obligation than FIFRA's requirement that labels not contain 'false or misleading statements,' that state law cause of action would be pre-empted by § 136v(b) to the extent of that difference").

The facts alleged in the complaint further track both FIFRA and California law requirements.[21] *Cf. Bates*, 544 U.S. at 454 ("[A] manufacturer should not be held liable under a state labeling requirement subject to § 136v(b) unless the manufacturer is also liable for misbranding as defined by FIFRA").

---

[21]Complaint, ¶ 102 (Monsanto "failed to communicate adequate information on the dangers and safe use/exposure and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended and reasonably foreseeable uses"); *id.* at ¶ 103 (defendant "disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately adequately the comparative severity, duration, and extent of the risk of injuries").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-1988-DMG (Ex)** | Date | July 12, 2016 |
|---|---|---|---|
| Title | *Ines Hernandez and Maria Hernandez v. Monsanto Company* | Page | **9** of **14** |

Because Plaintiffs' claims based on California's common law failure to warn cause of action do not impose labeling requirements that are "in addition to or different from" those required under FIFRA, his claims are not preempted. *Accord Giglio v. Monsanto Co.*, No. 15CV2279 BTM(NLS), 2016 WL 1722859, at *2 (S.D. Cal. Apr. 29, 2016) ("Here, Plaintiff essentially argues that Defendant failed to warn consumers that Roundup is carcinogenic. Failure to include a warning regarding known carcinogenic properties of a pesticide would constitute misbranding under § 136(q)(G). Therefore, it seems that Plaintiff's failure to warn claims do not impose a labeling or packaging requirement that is "in addition to or different from" those required under FIFRA, and are not preempted"); *Hardeman*, 2016 WL 1749680, at *1 (same).

### 4. EPA Registration and Factual Findings Do Not Result in Preemption of Plaintiffs' Claims

Monsanto contends that Plaintiffs' claims are nonetheless preempted, citing *Bates* for the proposition that "[s]tate-law requirements must . . . be measured against any relevant EPA regulations that give content to FIFRA's misbranding standards." *Bates*, 544 U.S. at 453. Monsanto argues that the "regulations that give content" to FIFRA include (1) the EPA's approval of the current Roundup label without a cancer warning; and (2) the EPA's factual findings that glyphosate does not cause cancer. They assert that Plaintiffs' claims are preempted to the extent that they contradict these agency decisions.

#### a. EPA Registration

Monsanto argues that because Plaintiffs bring the present suit based on alleged misrepresentations and insufficient warnings contained on a label that was approved by the EPA in the process of registering Roundup, Hernandez's failure to warn claims seek to impose "labeling requirement[s] different or in addition to" these findings of the EPA. Defendants offer two theories as to why the EPA's approval is preemptive: (1) the agency determination that the label complies with FIFRA and subsequent approval of Roundup's registration have force of law and are preemptive; and (2) because FIFRA requires applicants to use label exactly as approved, California's requirements are different from FIFRA to the extent that they require or incentivize defendants to change their label once it has been approved.

Defendants first argue that the EPA will approve a pesticide application only if "[t]he Agency has determined that the product is not misbranded as that term is defined in FIFRA." 40 C.F.R. § 152.112(f). Because the EPA has concluded that, at the time of registration, Roundup was not misbranded, Monsanto argues that any subsequent state law claims contradicting such a determination are preempted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-1988-DMG (Ex)** | Date | July 12, 2016 |
|---|---|---|---|
| Title | *Ines Hernandez and Maria Hernandez v. Monsanto Company* | Page | **10** of **14** |

"Of course, if the EPA's approval of Roundup's label had the force of law, it would preempt conflicting state-law enforcement of FIFRA. But there's no indication that the EPA's approval of Roundup's label had the force of law." *Hardeman*, 2016 WL 1749680, at *2 (citing *Wyeth*, 555 U.S. at 576; *United States v. Mead Corp.*, 533 U.S. 218, 227–34 (2001)).

Indeed, the Supreme Court's decision in *Bates* compels the opposite conclusion. In that case, as in this one, the plaintiffs challenged a label that had already been approved by the EPA in the course of registration. The Supreme Court nonetheless permitted the plaintiffs to bring state law failure to warn claims to the extent that state law paralleled FIFRA. *Bates,* 544 U.S. at 434-35. *Bates* thus "established that mere inconsistency between the duty imposed by state law and the content of a manufacturer's labeling approved by the EPA at registration did not necessarily mean that the state law duty was preempted." *Indian Brand Farms,* 617 F.3d at 222; *see also Hardeman*, 2016 WL 1749680, at *1 (same). In noting that the "relevant EPA regulations that give content to FIFRA's misbranding standards" have preemptive effect, the *Bates* Court appears to have been referencing the EPA-promulgated regulations themselves, not the administrative determinations made in approving a registration. *See Bates*, 544 U.S. at 453 ("For example, a failure-to-warn claim alleging that a given pesticide's label should have stated "DANGER" instead of the more subdued "CAUTION" would be pre-empted because it is inconsistent with 40 CFR § 156.64 (2004), which specifically assigns these warnings to particular classes of pesticides based on their toxicity").

The plain language of Section 136(f)(2) further supports the conclusion that the EPA's registration decision is not preemptive. That section states:

> In no event shall registration of an article be construed as a defense for the commission of any offense under this subchapter. As long as no cancellation proceedings are in effect registration of a pesticide shall be prima facie evidence that the pesticide, its labeling and packaging comply with the registration provisions of the subchapter.

7 U.S.C. § 136(f)(2).

As the *Hardeman* court noted, "'prima facie evidence' is not conclusive proof." *Hardeman*, 2016 WL 1749680, at *2. Section 136(f)(2) contemplates a scenario where Plaintiffs rebut Defendant's *prima facie* evidence by introducing evidence demonstrating that a pesticide's labeling and packaging does not comply with FIFRA. Thus, the statute gives rise to a rebuttable presumption which will not defeat Plaintiffs' claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-1988-DMG (Ex)** | Date | July 12, 2016 |
|---|---|---|---|
| Title | *Ines Hernandez and Maria Hernandez v. Monsanto Company* | Page | **11** of **14** |

     Finally, the Supreme Court has explained that individual tort suits further Congress's intent in enacting FIFRA, and in doing so highlights why the conclusion that an EPA label approval is preemptive would be contrary to that intent. "FIFRA contemplates that pesticide labels will evolve over time, as manufacturers gain more information about their products' performance in diverse settings." *Bates*, 544 U.S. at 451. "Because it is unlawful under [FIFRA] to sell a pesticide that is registered but nevertheless misbranded, manufacturers have a continuing obligation to adhere to FIFRA's labeling requirements. § 136j(a)(1)(E); *see also* . . . § 136a(f)(1)(a manufacturer may seek approval to amend its label). Additionally, manufacturers have a duty to report incidents involving a pesticide's toxic effects that may not be adequately reflected in its label's warnings, 40 CFR §§ 159.184(a), (b) (2004)." *Id.* at 438-39; *see also Chem. Specialties Mfrs. Ass'n, Inc. v. Allenby*, 958 F.2d 941, 947 (9th Cir. 1992) ("FIFRA provides that a pesticide is misbranded if the warning on the label is insufficient to protect the public health. 7 U.S.C. § 136(q)(1)(G) (1988). As manufacturers uncover additional information about the health risks of their products, they must bring this information to the attention of the EPA and add this information to their product labels."); *Bates,* 544 U.S. at 439 ("[M]anufacturers have a duty to report incidents involving a pesticide's toxic effects that may not be adequately reflected in its label's warnings," citing 40 CFR §§ 159.184(a), (b)).

     In sum, Monsanto's argument that the EPA's registration of a pesticide, including approval of the label's contents, is in itself preemptive finds no support in precedent, the plain language of FIFRA, or Congressional intent.

     Monsanto next argues that because FIFRA requires applicants to use the exact label that the EPA approved at registration, state tort suits indicating that such a label should be changed actually compels defendants to *violate* FIFRA. *See* 40 C.F.R § 152.130(a) (1988) (pesticide products may be distributed or sold only with the "labeling currently approved by the Agency"); 40 C.F.R § 156.70(c) (1988) ("specific statements pertaining to the hazards of the product and its uses must be approved by the Agency"); 40 C.F.R. § 152.112(f) (EPA will approve a pesticide application only if "[t]he Agency has determined that the product is not misbranded as that term is defined in FIFRA . . . and its labeling and packaging comply with the applicable requirement of the Act. . . .'").

     In support of its argument, Monsanto cites to *Mirzaie v. Monsanto Co.*, No. CV 15-04361 DDP (FFMx), 2016 WL 146421, at *2 (C.D. Cal. Jan. 12, 2016). In *Mirzaie*, the plaintiffs brought an action seeking injunctive relief to have the Court or jury strike certain phrases from the Roundup label without EPA approval. *Id.* at *2. The court denied the plaintiffs' request, holding that under FIFRA, a Court or jury does not have authority to mandate a label change. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-1988-DMG (Ex)** | Date | July 12, 2016 |
| Title | *Ines Hernandez and Maria Hernandez v. Monsanto Company* | Page | **12** of **14** |

Here, Plaintiffs seek damages, not injunctive relief. The Supreme Court explained the significance of such a distinction in *Bates*:

> An occurrence that merely motivates an optional decision does not qualify as a requirement. The Court of Appeals was therefore quite wrong when it assumed that any event, such as a jury verdict, that might 'induce' a pesticide manufacturer to change its label should be viewed as a requirement. . . .
>
> In arriving at a different conclusion, the court below reasoned that a finding of liability on these claims would 'induce Dow to alter [its] label.' 332 F.3d at 332. This effects-based test finds no support in the text of § 136v(b), which speaks only of 'requirements.' A requirement is a rule of law that must be obeyed; an event, such as a jury verdict, that merely motivates an optional decision is not a requirement. . . .
>
> Moreover, the inducement test is not entirely consistent with § 136v(a), which confirms the State's broad authority to regulate the sale and use of pesticides. Under § 136v(a), a state agency may ban the sale of a pesticide if it finds, for instance, that one of the pesticide's label-approved uses is unsafe. This ban might well induce the manufacturer to change its label to warn against this questioned use. Under the inducement test, however, such a restriction would anomalously qualify as a 'labeling' requirement. It is highly unlikely that Congress endeavored to draw a line between the type of indirect pressure caused by a State's power to impose sales and use restrictions and the even more attenuated pressure exerted by common-law suits."

544 U.S. at 443, 445, 446.

A verdict in Plaintiffs' favor would at most induce, but not require, Monsanto to change its label to include the appropriate warning. Indeed, there would be nothing to prevent Monsanto from doing so in compliance with FIFRA, by petitioning the EPA to approve a change in labeling. FIFRA's labeling requirement therefore does not preempt Plaintiffs' claims.

### b. EPA's Factual Findings

Monsanto also argues that the EPA has made factual findings that glyphosate does not cause cancer, and that such findings preempt a state common law claim alleging that such warning should have been given. Yet, accepting the facts alleged in the Complaint as true, as the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-1988-DMG (Ex)** | Date | July 12, 2016 |
| Title | *Ines Hernandez and Maria Hernandez v. Monsanto Company* | Page | **13** of **14** |

Court must at this stage, the EPA has stated that its classification "should not be interpreted as a definitive conclusion that the agent will not be a carcinogen."[22]

Further, although Monsanto argues that the EPA's factual findings themselves are preemptive, it provides no support for this proposition, nor is the Court aware of any such precedent. Indeed, if the EPA's registration decision is not preemptive, it follows that the factual findings on which it relied in making that decision also are not preemptive.

Monsanto's argument could also be construed as an offer of proof that the EPA's factual findings are evidence that Roundup is not, in fact, carcinogenic. Such arguments, which require the Court to weigh evidence and make factual determinations, are not appropriate at the motion to dismiss stage. *See, e.g.*, *Giglio*, 2016 WL 1722859, at *3 ("Defendant argues that Roundup in fact is not carcinogenic and that the EPA has made determinations that this is the case. However, a motion to dismiss is not the proper vehicle to delve into the import of EPA classifications or what EPA representatives have said in the past, what information they were relying on, and what effect their statements have on the issues before the Court").

In sum, Monsanto has failed to meet its burden of demonstrating that preemption exists. *See Wyeth*, 555 U.S. at 565. Its motion to dismiss claims II, III, IV, and V is denied.

### C. Plaintiff's Design Defect Claim Need Not Be Dismissed Pursuant to Comments j and k to the Restatement (Second) of Torts, § 402A

Monsanto next moves to dismiss Plaintiffs' design defect claim. According to Monsanto, Plaintiffs' design defect claim relies on the allegation that glyphosate and Roundup are inherently and unavoidably dangerous. Monsanto argues that Plaintiffs' design defect claim is therefore governed by comments j and k to the Restatement (Second) of Torts, § 402A and that Plaintiffs are limited to claims that the warnings accompanying the product are deficient. Monsanto asserts that, because Plaintiffs' design defect claims again rely on a failure-to-warn argument, those claims are preempted for the same reasons discussed in the previous section.

Monsanto's argument fails because, as discussed above, FIFRA does not preempt California failure-to-warn claims. The Court need not and does not address whether comments j and k to the Restatement (Second) of torts limit Plaintiffs' claims.

---

[22] Complaint at ¶ 27.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-1988-DMG (Ex)** | Date | July 12, 2016 |
| Title | *Ines Hernandez and Maria Hernandez v. Monsanto Company* | Page | **14** of **14** |

   **D.**  **Plaintiff Ines Hernandez's Loss of Consortium Claim Need Not Be Dismissed**

  Monsanto argues that Mrs. Hernandez's loss of consortium claim (claim VI) should be dismissed if the remainder of Plaintiffs' claims are dismissed because it is purely derivative of the personal injury claims.[23] Because the Court has not dismissed all of Plaintiffs' other claims and Defendant offers no other basis for dismissing the loss of consortium claim, its motion to dismiss this claim is denied.

   **E.**  **Plaintiffs' Breach of Express Warranty Claim Must Be Dismissed With Leave to Amend**

  Monsanto maintains that Plaintiffs fail to state a claim for breach of express warranty.[24] Plaintiffs withdraw the breach of express warranty claim and requests that the Court dismiss the claim without prejudice and grant them leave to amend the complaint. Accordingly, the breach of express warranty claim is dismissed with leave to amend.

### III. CONCLUSION

  In light of the foregoing, the Court **GRANTS** Monsanto's motion to dismiss Plaintiffs' express warranty claim with leave to amend. Plaintiffs may file an amended complaint within 21 days of the date of this Order. The Court does not grant leave to add new defendants or new claims. Monsanto's motion to dismiss is **DENIED** as to the remainder of Plaintiffs' claims. Monsanto shall file its response within 21 days after the deadline for Plaintiffs to file their amended complaint.

**IT IS SO ORDERED.**

---

[23] Mot. At 21-22.

[24] *Id.*, at 20.